Form FmHA 1944-34
(8-1-80)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

LOAN AGREEMENT FOR AN

[ ] RRH Loan to a Partnership Operating on a Profit Basis
[ ] RRH Loan to a Limited Partnership Operating on a Profit Basis
[ ] RRH Loan to a Partnership Operating on a Limited Profit Basis
[x] RRH Loan to a Limited Partnership Operating on a Limited Profit Basis

1. Parties and Terms Defined. This agreement dated March 30, 1983 of the Deer Run Villas, Ltd., a Partnership, duly organized and operating under Chapter 620, Florida Statutes, herein called "Partnership", whose post office address is P.O. Box 40 Archer, Fl. 32618, with the United States of America acting through the Farmers Home Administration, United States Department of Agriculture, herein called "the Government", is made in consideration of a loan, herein called "the loan", to Partnership in the amount of $ 535,750. made or insured, or to be made or insured, by the Government pursuant to sections 515 (b) of the Housing Act of 1949 to build a Low-moderate income rental housing project. The loan may be sold and insured by the Government. The loan shall be used solely for the specific eligible purposes for which it is approved by the Government in order to provide rental housing and related facilities for eligible occupants, as defined by the Government in rural areas. Such housing and facilities and the land constituting the site as herein called "the housing". The indebtedness and other obligations of the Partnership under the note evidencing the loan, the related security instrument and related agreement are herein called the "loan obligations".

2. Execution of Loan Instruments. To evidence the loan the Partnership shall issue a promissory note (herein referred to as "the note"), signed by Ralph S. Carver for the amount of the loan, payable in installments over a period of 50 years, bearing interest at a rate, and containing other terms and conditions, prescribed by the Government. To secure the note or any indemnity or other agreement required by the Government, Ralph S. Carver are to execute a real estate security instrument giving a lien upon the housing and upon such other real property of the Partnership as the Government shall require, including an assignment of the rents and profits as collateral security to be enforced in the event of any default by the Partnership, and containing other terms and conditions prescribed by the Government. Ralph S. Carver are to execute any other security instruments and other instruments and documents required by the Government in connection with the making or insuring of the loan. The indebtedness and other obligations of the Partnership under the note, the related security instrument, and any related agreement are herein called the "loan obligation".

3. Equal Opportunity and Nondiscrimination Provisions. The Partnership will execute (a) any undertakings and agreements required by the Government pursuant to Title VIII of the Civil Rights Act of 1968 related to Fair Housing regarding nondiscrimination in the use and occupancy of housing, (b) Farmers Home Administration Form FmHA 400-1 entitled "Equal Opportunity Agreement", including an "Equal Opportunity Clause" to be incorporated in or attached as a rider to each construction contract the amount of which exceeds $10,000 and any part of which is paid for with funds from the loan, and (c) Farmers Home Administration Form FmHA 400-4, entitled "Assurance Agreement (Under Title VI, Civil Rights Act of 1964)", a copy of which is attached hereto and made a part thereof and any other undertakings and agreements required by the Government pursuant to lawful authority.

4. Borrower Contribution. The amount of $ 28,200. to be contributed by the Partnership from it's own funds for the land purchase or development will be placed or deposited with the lender and dispersed priod to any disbursement of interim loan funds or any FmHA loan funds. SEP 2 3 1983

5. Accounts for Housing Operations and Loan Servicing. The Partnership shall establish on its books the following accounts, which shall be maintained in accordance with FmHA Regulation 7 CFR Part 1930-C so long as the loan obligations remain unsatisfied: A General Fund Account, a Tax and Insurance Escrow Account, a Security Deposit Account and a Reserve Account.

Position 2

☆ U.S.G.P.O.: 1980-0-665-152/5

A

a. General Operating Account. By the time the Farmers Home Administration loan is closed or interim funds are obtained to preclude the necessity for multiple advances of Farmers Home Administration loan funds, which ever occurs first, the Partnership shall from its own funds deposit in the General Operating Account the amount of $ 11,280. .

b. Reserve Account. Transfers at a rate not less than $ 5,360.00 annually shall be made to the Reserve Account until the amount in the Reserve Account reaches the sum of $ 53,600.00 and shall be resumed at any time when necessary, because of disbursements from the Reserve Account to restore it to said sum. Use of funds deposited to this account will be in accordance with FmHA Regulation 7 CFR Part 1930-C. With prior consent of the Government funds in the Reserve Account may be used by the Partnership:

To pay dividends to the partners of up to 8 percent per annum of the borrower's initial investment of $ 28,200.00 , provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will be not less than that required by subsection 5 b to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

To pay dividends to the partners or for any other purpose desired by the Partnership, provided the Partnership determines that after such disbursement (a) the amount in the Reserve Account will not be less than that required by subsection 5 b to be accumulated by that time and (b) during the next 12 months the amount in the Reserve Account will likely not fall below that required to be accumulated by the end of such period.

6. Regulatory Covenants. So long as the loan obligatio remain unsatisfied, the Partnership shall comply with all appropriate FmHA regulations and shall.

a. Impose and collect such fees, assessments, rents, and charges that the income of the housing will be sufficient at all times for operation and maintenance of the housing, payments on the loan obligations, and maintenance of the accounts herein provided for.

b. Maintain complete books and records relating to the housing's financial affairs, cause such books and records to be audited at the end of each fiscal year, promptly furnish the Government without request a copy of each audit report, and permit the Government to inspect such books and records at all reasonable times.

c. If required or permitted by the Government, revise the account herein provided for, or establish new accounts, to cover handling and disposition of income from and payment of expenses attributable to the housing or to any other property securing the loan obligations, and submit regular and special reports concerning the housing or financial affairs.

d. Agree that if any provisions of its organizational documents or any verbal understandings conflict with the terms of this loan agreement, the terms of the loan agreement shall prevail and govern.

e. Unless the Government gives prior consent:

(1) Not use the housing for any purpose other than as rental housing and related facilities for eligible occupants.

(2) Not enter into any contract or agreement for improvements or extensions to the housing or other property securing the loan obligations.

(3) Not change the membership by either the admission or withdrawal of any partner(s) nor permit the general partner(s) to maintain less than a 5 percent financial interest in the organization nor cause or permit voluntary dissolution of the Partnership nor cause or permit any transfer or encumbrance of title to the housing or any part thereof or interest therein, by sale, mortgage, lease, or otherwise.

(4) Not borrow any money, nor incur any liability aside from current expenses as defined in section 7 which would have a detrimental effect on the housing.

f. Submit for the housing the required reports as per FmHA Regulation 7 CFR Part 1930-C to the Government for prior review.

1983

g. If required by the Government, modify and adjust any matters covered by clause (f) of this section.

h. Comply with all its agreements and obligations in or under the note, security instrument, and any related agreement executed by the Partnership in connection with the loan.

i. Not alter, amend, or repeal without the Government's consent this agreement or the Partnership Agreement, which shall constitute parts of the total contract between the Partnership and the Government relating to the loan obligations.

j. Do other things as may be required by the Government in connection with the operation of the housing, or with any of the Partnership's operations or affairs which may affect the housing, the loan obligations, or the security.

k. If return on investment for any year exceeds 8 percent per annum of borrower's initial investment of $ 28,200., the Government may require that the borrower reduce rents the following year and/or refund the excess return on investment to the tenants or use said excess in a manner that will best benefit the tenants.

7. General Provisions.

a. It is understood and agreed by the Partnership that any loan made or insured will be administered subject to the limitations of the authorizing act of Congress and related regulations, and that any rights granted to the Government in this agreement or elsewhere may be exercised by it in its sole discretion.

b. The provisions of this agreement are representations to the Government, to induce the Government, to make or insure a loan to the Partnership as aforesaid. If the Partnership should fail to comply with or perform any provision of this agreement or any requirement made by the Government pursuant to this agreement, such failure shall constitute default as fully as default in payment or amounts due on the loan obligations. In the event of such failure, the Government at its option may declare the entire amount of the loan obligations immediately due payable and, if such entire amount is not paid forthwith, may take possession of an operate the housing and proceed to foreclose its security and enforce all other available remedies.

c. Any provisions of this agreement may be waived by the Government in its sole discretion, or changed by agreement between the Government and the Partnership, after this agreement becomes contractually binding, to any extent such provisions could legally have been foregone or agreed to in amended form, by the Government initially.

d. Any notice, consent, approval, waiver, or agreement must be in writing.

e. This agreement may be cited in the security instrument and any other instruments as the "Loan Agreement" of March 30., 19 83.

By: [signature]

Deer Run Villas, Ltd.
PARTNERSHIP NAME

General Partner

Deed Book 120 Page 201

... T.S.C. #1...

... and in ... paid by ... acknowledged, ... assigns, the right ... on or adjacent to ... County, Florida,

to-wit:

... parties ... of future ... Power Company, ... and guy wires ... receipt of written request from the property owner to move said anchors and guy wires. The property owner will provide another acceptable location on the above described property, at no furthur expense to said Company.

Said anchors and guy wires to be installed in connection with a line to be constructed along the margin of the public road (or street) known as Florida State Road No. 10 (U. S. Highway No. 90).

IN WITNESS WHEREOF, I have hereunto set my hand and seal, this the 21st day of March, 1966.

Signed, sealed and delivered in the presence of:

[signature] (SEAL)

[signature]

[signature]

STATE OF FLORIDA

COUNTY OF SANTA ROSA

Before the subscriber, a Notary Public in and for said State and County, personally appeared E. E. Bettis known to me to be the individual described by that name in and who executed the foregoing instrument and acknowledged that he executed the same for the uses and purposes therein set forth.

DEED 125 PAGE 260

**STATE OF FLORIDA**
**County of Santa Rosa**

KNOW ALL MEN BY THESE PRESENTS: That we, Claude Pendleton and Inez Pendleton husband and wife, Perry Pendleton and [illegible] Pendleton, husband and wife, Bessie Belle Brown and J. [illegible] Brown, her husband, Myrtle Smith and Claude Smith, her husband, Helen Blackman and Obie Blackman, her husband, Millege Pendleton, a single man, R. S. Pendleton and Bettie Pendle, his wife for and in consideration of One Dollar and other valuable considerations Dollars the receipt whereof is hereby acknowledged, do bargain, sell, convey and grant unto IO ELLA PENDLETON her heirs, executors, administrators and assigns, forever, the following described property, situate, lying and being in the County of Santa Rosa, State of Florida, to-wit: The East [illegible] feet of the West 237.7 feet of the South 5 chains of the Northwest Quarter of the Northwest Quarter of Section 15, Township 1 North, Range 28 West.

BOOK 125 PAGE 281

TO HAVE AND TO HOLD, the said above described premises unto the said grantee her heirs and assigns forever in fee simple, together with all and singular, the tenements, hereditaments and appurtenances there to belonging or in any wise appertaining, free from all exemptions and right of homestead. And we covenant that we are well seized of said property, and have a good right to convey the same, that it is free from incumbrances, and that our heirs, executors, administrators, the said grantee her heirs, executors, administrators and assigns, in the quiet and peaceful possession and enjoyment thereof, against all persons lawfully claiming the same, shall and will forever warrant and defend.

IN WITNESS WHEREOF we have hereunto set our hand s and seal s this 17 day of April A.D. 1956

Signed, sealed and delivered in the presence of

Ben ... Parker

Margaret A. Glover

Claude Pendleton (Seal)

... Pendleton (SEAL)

... Pendleton (SEAL)

Edna Pendleton (SEAL)

Bessie B. Brown (SEAL)

... Brown (Seal)

Myrtle Smith (Seal)

... Smith (Seal)

... (Seal)